UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN JOINER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7144** |
| **OFFICER TAYLOR LEWIS, ET AL.** | **SECTION "R"(4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (ECF No. 25)** filed by defendants Dr. Samuel Gore and Dr. Jose Ham seeking dismissal of plaintiff John Joiner's claims of medical indifference asserted in his *pro se* and *in forma pauperis* prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.  Background

####   A.  Plaintiff's Complaint

Joiner is a pretrial detainee housed in the St. Tammany Parish Jail ("STPJ"). ECF No. 1, ¶III(A), at 3. He alleges in his complaint, brought against Dr. Gore, Dr. Ham, and two St. Tammany Parish Sheriff's Deputies, Taylor Lewis and Chance Cloud, that he suffered a broken jaw during his arrest by the deputies on January 20, 2023. *Id.*, ¶III(B)-(E), at 5; *id.*, ¶IV, at 5. Relevant to the claims asserted against the movants, Drs. Gore and Ham, Joiner claims that after his arrest, he was taken straight to the St. Tammany Hospital emergency room and given a follow-up appointment with a surgeon. *Id*. After that visit, Joiner claims that he was taken to STPJ where

he was denied the follow-up appointment with the surgeon and refused treatment to repair his jaw. He claims that this has resulted in chronic jaw pain, constant headaches, and extreme difficulty eating and speaking. Relevant to the medical indifference claims, he seeks compensatory damages for his future medical expenses to repair his jaw and for pain and suffering from the time of the incident until his jaw is repaired. *Id*., ¶V, at 6.

### B. Motion to Dismiss filed by Drs. Gore and Ham (ECF No. 25)

In their motion, Drs. Gore and Ham move to dismiss Joiner's claims against them for failure to state specific claims against each of them and because the prison medical records "rebut any allegation of deliberate indifference." ECF No. 25-1, ¶II(b)-(d), at 6-7. The defendants argue that Joiner has failed to allege that Dr. Ham was or is his medical provider, and reference the medical records to establish that Dr. Gore was his caretaker at the jail. *Id*., ¶II(b), at 6. Defendants further argue that, based on the medical records, Dr. Gore only provided personalized treatment to Joiner on a recent visit on January 10, 2024. *Id*., ¶II(c), at 6-7.

Relying heavily on the uncertified medical records attached to the motion, defendants argue that Dr. Gore's role prior to that involved only preparation of progress notes dated February 8, March 6, April 27, and May 22, 2023. *Id*. at 7. Otherwise, defendants argue, the treatment Joiner received was provided by CorrectHealth staff, "who followed the treatment plan given by the off-site higher level of care providers." *Id*. Following this bold assertion, defendants summarize and reference portions of the medical records which they argue demonstrate that Joiner's factual assertions about his care are incorrect and that he received adequate medical care while at STPJ. *Id*., ¶II(d), at 7-10.

2

      **a.**      <u>**Plaintiff's Opposition Memorandum**</u>

In his opposition to defendants' motion to dismiss, Joiner alleges that during his January 20, 2023, emergency room visit, it was recommended that he undergo reconstructive surgery with oral fixation to properly repair the zygomatic arch fracture. ECF No. 26, ¶I, at 1. He further claims that an immediate follow-up examination was scheduled with the oralmaxiofacial surgeon for January 25, 2023. Joiner asserts that it was his understanding that the immediate surgery was necessary to realign the fractured bone to allow for proper healing.

Joiner alleges that he is without medical knowledge to refute the "overwhelming documentation of his Acetaminophen 500mg prescription and provision." *Id*. at 2. He claims that Dr. Gore and Dr. Ham are the supervisory physicians at the jail and are responsible for his medical care or the lack of care. Joiner contends that he has alleged a claim under the three part requirements of *Estelle v. Gamble*, 429 U.S. 97 (1976). He further contends that, while his injury was caused by the deputy-defendants, the failure to properly treat his serious medical condition is the result of the fourteen months without adequate medical care except Acetaminophen 500mg, which has not eased his chronic pain, headaches, and difficulty speaking, eating, and sleeping. He claims that these conditions are direct result of the mis-aligned healing of his zygomatic arch fracture which could have been prevented by following the emergency room doctor's recommendation. *Id*. at 4.

      **b.**      <u>**Defendants' Reply**</u>

Defendants first challenge Joiner's opposition memorandum on grounds that it was not timely filed in accord with this court's local rules. ECF No. 28, ¶II, 1-2. Alternatively, defendants' respond to Joiner's opposition claiming that the *pro se* prisoner has cited to irrelevant case law from outside of the circuit but does not establish that Drs. Gore or Ham refused or delayed his

3

medical treatment. *Id.*, ¶I, at 1; *id.*, ¶III, at 2. Again referring to the uncertified medical records attached to the motion, defendants argue that Joiner has not demonstrated that Dr. Ham was his provider or that Dr. Gore's treatment of him in January of 2024 was inadequate. *Id.* at 2; *id.*, ¶IV, at 3-4. Defendants also point to Joiner's assertion that the doctors are supervisory physicians, which alone fails to state a claim against or actual wrongdoing by Dr. Gore or Dr. Ham individually. *Id.*, ¶III, at 2. Based solely on the uncertified medical records, defendants also argue that plaintiff's claims of continued pain and suffering for fourteen months is "erroneous" since the records demonstrate that he was seen by medical care providers under the jail's chronic care plan and the medical care providers notes indicated that he did not report jaw pain at certain visits. *Id.*, ¶IV, at 4. Defendants contends that his disagreement with the care he received is not sufficient to state a claim for relief. *Id.*, ¶V, at 5-6.

## II.     Standards of Review

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which relief may be granted. To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim

4

to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*.

However, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976), the Court further explained this standard in the prisoner context:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

5

*Id.* at 713-14. Because of this, before dismissing a prisoner complaint under Rule 12(b)(6), a district court ordinarily should give the *pro se* litigant an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

Furthermore, in considering a Rule 12(b)(6) motion, "a district court *must* limit itself to the contents of the pleadings, including attachments thereto." (emphasis added) *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, a district court may consider certain information outside of the pleadings "if that evidence is either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201." *George v. SI Grp., Inc.*, 36 F. 4th 611, 619 (5th Cir. 2022).

### III. Discussion

#### A. Plaintiff's Opposition will be Considered

In their reply memorandum, defendants urge the Court to disregard Joiner's opposition memorandum asserting that it was not timely filed. As noted by defendants, to have been timely under the Court's rules, Joiner's opposition should have been filed on or before March 19, 2024, but was not received by the clerk of court until March 27, 2024. ECF No. 28, ¶II, at 2.

Having found good cause and no prejudice to defendants, the Court has by separate order granted Joiner's Motion for Extension of Time (ECF No. 29) seeking a retroactive extension to file his opposition memorandum outside of the time allowed by EDLA Local Rule 7.5. The Court also notes that looking to the certificates of service attached to defendants' pleadings, it is unclear whether or when a copy of the motion was served on Joiner by defendants in accordance with EDLA Local Rule 5.4 and/or Fed. R. Civ. Proc. 5(b)(2). All of defendants' certificates of service

indicate that service was made through the Court's CM/ECF system or by electronic mail. *See* ECF No. 25, at 2; ECF No. 25-1, at 14; ECF No. 25-3, at 2. Joiner is a prisoner proceeding *pro se* in this action. He is not represented by counsel, has not provided an email address of record, and is not privy to the Court's CM/ECF system. Therefore, Joiner would not have received service through the CM/ECF system or by electronic mail in the manner certified by defendants' counsel.

Nevertheless, the timeliness of Joiner's opposition memorandum is irrelevant at this juncture and the Court rejects defendants' invitation to disregard Joiner's *pro se* opposition memorandum.

### B.   Medical Records Will Not Be Considered

The defendants Dr. Gore and Dr. Ham filed the instant motion seeking dismissal of Joiner's medical indifference claims based almost exclusively on Joiner's purported medical records attached to their motion to dismiss. ECF Nos. 25-2. Defendants argue that the factual assertions made by plaintiff in his complaint are refuted by the records attached to the motion. However, the medical records are not referenced or incorporated in or attached to Joiner's *pro se* complaint. The medical records attached to defendants' motion are not verified or certified in any way as authentic or complete.[1]

The filing of motions to dismiss by these same defendants and other prison medical care providers (represented by current counsel) has become a common-place, ill-practice despite numerous orders and directives from multiple sections of this Court advising them that reliance on prison medical records (especially uncertified copies) to support a Rule 12(b)(6) motion is not appropriate and requires the Court to take corrective action (conversion to summary judgment and

---

[1] The records also, without explanation, include a copy of Joiner's complaint and the summons issued to Dr. Gore and the pauper application issued by the Court in this case, none of which are medical records. *Id*. at 83-94.

7

additional briefing delays) before the motion can be considered. For example, in addressing a similar Rule 12(b)(6) motion accompanied by prison medical records, this Court advised these same defendants (with the same counsel) that a Rule 12 motion "is not the time to resolve factual disputes; the test at the pleadings stage juncture is whether a claim has been stated, not proved." *Phoenix on behalf of S.W. v. Lafourche Parish Gov't*, No. 19-13004, 2020 WL 3269114, at *9 (E.D. La. Jun. 17, 2020) ("*Phoenix*"). The Court in *Phoenix* could not and would not consider the prison medical records without converting the defendants' Rule 12(b)(6) motion into a Fed. R. Civ. Proc. 56 motion for summary judgment, with issuance of the required notice of the conversion to the parties and additional time to respond. *See Zantiz v. Seal*, 602 F. App'x 154, 160-161 (5th Cir. 2015). In *Zantiz*, the United States Fifth Circuit similarly held that a prisoner's medical records could not be considered in ruling on a motion to dismiss, noting that there are *no* cases where courts consider medical records at the motion to dismiss stage without converting the motion into a motion for summary judgment. *Id*.

    The Court is aware that the Fifth Circuit allows consideration of medical records at the preliminary screening stages of prison § 1983 complaints by the courts under § 1915. *Banuelos v. McFarland*, 41 F.3d 232, 234-35 (5th Cir. 1995). However, even in those instances, the medical records and other prison records must be "adequately identified or authenticated" and the plaintiff given an opportunity to challenge them. *Id*. at 234-35 (citation omitted); *see Zantiz*, 602 F. App'x at 160-61 (noting that although defendant "cites cases where we have considered medical records in reviewing either the dismissal of a prisoner's *in forma pauperis* lawsuit as frivolous or the denial of a motion for summary judgment based on qualified immunity, . . . [he] points to no cases where we have considered medical records at the motion to dismiss stage" and further noting that "[e]vidence that is outside the pleadings cannot be considered for a motion to dismiss" unless the

motion is converted to one for summary judgment). The records submitted with the instant motion are not authenticated or established as complete.

Despite the clear mandate of Rule 12(b)(6) and the cited precedent and their progeny, defendants have improvidently filed this Rule 12(b)(6) motion almost exclusively relying on unverified prison medical records that were not referenced in or part of the *pro se* prisoner complaint. Such filings can create unnecessary burdens on the court's docket (conversion and briefing delays) and should be avoided, especially in those cases involving *pro se* prisoner plaintiffs entitled to broader pleading construction. *Taylor*, 529 F.2d 713-14.

For these reasons, the Court declines to consider the medical records in connection with this Rule 12(b)(6) motion and declines to convert defendants Rule 12(b)(6) motion to a summary judgment since the medical records attached to the motion are not certified or verified and were not referenced in or attached to the *pro se* complaint itself to have prompted their inclusion or consideration at this stage of the proceedings. Defendants can present the records in a properly filed motion for summary judgment if necessary and appropriate at a later time.

C. **Claims Asserted Against Dr. Ham and Dr. Gore**

Joiner alleges that Dr. Ham and Dr. Gore failed to provide him with adequate follow-up care for his broken jaw suffered during his arrest on January 20, 2023. Inadequate medical care for purposes of § 1983 occurs when the conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs" that "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104. As applied to pretrial detainees, like plaintiff, "[t]he Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011). Under this deliberate indifference standard, a prison official is not liable individually unless

the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Deliberate indifference is manifested in the providers intentional denial of medical care or intentionally interfering with the treatment once prescribed. *Farmer*, 511 U.S. at 847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency." *Id*. Thus, mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Defendants contend in their motion that plaintiff has failed to allege that Dr. Ham was his medical provider at the jail, and that Dr. Gore's role was only to provide four sets of "progress notes" and one actual examination of Joiner on January 10, 2024, after this lawsuit was filed. ECF No. 25-1, at 6-7. Defendants do not explain how a physician could oversee a patient's care without having a role in it nor how a physician can draft progress notes without examining the patient or reviewing the very records which plaintiff claims demonstrate a lack of adequate care.

Nevertheless, these arguments by defendants are not inconsistent with Joiner's allegations. It is true that Joiner's *pro se* complaint does not provide detailed factual allegations about what each doctor did or did not do in the course of his medical treatment at the jail. However, under a broad reading of his *pro se* complaint and his arguments in the opposition memorandum, Joiner contends that defendants Dr. Ham and Dr. Gore were supervisory physicians at the jail and allowed or maintained a policy of restricting and delaying care which has resulted in the misaligned healing of his jaw and on-going pain and other residual issues. ECF No. 26, at 2-3. A supervisory official

10

may be held liable under § 1983 if he affirmatively participates in the acts that cause the constitutional deprivation or implements unconstitutional policies that causally result in the constitutional injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). A supervisory liability claim also requires a showing of deliberate indifference by the supervisor. *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

Here, Joiner's *pro se* complaint may be inartfully drafted but that does not stand as a reason to dismiss it at this early stage. Joiner at least presents a plausible basis for holding Dr. Ham and Dr. Gore liable under § 1983 if not individually then as supervisory figures. This conclusion is supported by the defendants' concession that Drs. Ham and Gore supervised and/or reviewed the progress of the medical care provided to Joiner by other medical personnel at STPJ. *See* ECF No. 28, ¶III, at 2 (". . . Dr. Gore and/or Dr. Ham supervised [Joiner's] treatment."); ECF No. 25-1, ¶II(c), at 7 (Dr. Gore prepared progress notes and examined Joiner once). Thus, there is a plausible claim before the Court that Drs. Ham and Gore may be responsible under § 1983 for Joiner's claim that he was denied follow-up care and otherwise received inadequate care for his broken jaw and related pain and residual problems.[2]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the Motion to Dismiss (ECF No. 25) filed by defendants Dr. Gore and Dr. Ham be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

---

[2] In the alternative, should the Court find that Joiner's complaint does not provide sufficient basis to proceed, Joiner should be given an opportunity to amend his claims to plead his best case before dismissal of his *pro se* prisoner complaint. *Bazrowx*, 136 F.3d at 1054.

11

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this  14th  day of May, 2024.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.