UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN JOINER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7144** |
| **OFFICER TAYLOR LEWIS, ET AL.** | **SECTION "R"(4)** |

**REPORT AND RECOMMENDATION**

Before the Court is a **Motion to Stay (ECF No. 32)** filed by defendants Deputy Taylor Lewis and Deputy Chance Cloud, each in their official capacity, seeking a stay of this proceeding pending resolution of the St. Tammany Parish criminal charges against plaintiff John Joiner. The *pro se* plaintiff has not filed a response to the defendants' motion.

The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.     Background**

    **A.     Plaintiff's Complaint**

Joiner is a pretrial detainee housed in the St. Tammany Parish Jail ("STPJ"). ECF No. 1, ¶III(A), at 3. Joiner brought this 42 U.S.C. § 1983 complaint against defendants Dr. Gore, Dr. Ham, and two St. Tammany Parish Sheriff's Deputies, Taylor Lewis and Chance Cloud. *Id*., ¶III(B)-(E), at 5. Joiner did not indicate in the caption or body of the complaint whether the defendants were named in their official or individual capacities. Relevant to this motion, Joiner alleges that "[a]fter an illegal traffic stop in an unmarked vehicle, Deputy Lewis and Deputy Cloud

broke my jaw while I was restrained in handcuffs." *Id*., ¶IV, at 5.  The remaining claims address the allegedly inadequate follow-up medical care Joiner received for his jaw by Drs. Gore and Ham at the St. Tammany Parish Jail and are not related to the instant motion.  *Id*.

In connection with the actions of the Deputies, Joiner seeks compensatory damages for his future medical expenses to repair his jaw and for pain and suffering from the time of the incident until his jaw is repaired.  *Id*., ¶V, at 6.  He also seeks punitive damages because the Deputies "under color of state law" broke his jaw while he was restrained and were motivated by evil intent, reckless disregard for his rights, and callous indifference.  *Id*.  He also seeks injunctive relief for the Deputies to be removed from the St. Tammany Parish Sheriff's Office.  *Id*.

### B. <u>Motion to Stay (ECF No. 32)</u>

In the subject Motion, Deputies Lewis and Cloud, in their official capacities *only*, seek an order staying this matter pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because the criminal charges against Joiner arising from his arrest remain pending in the state court, noting that a pretrial conference is scheduled for May 8, 2024.  ECF No. 32, at 1; ECF No. 32-1, at 1.  Defendants allege that Joiner's arrest on January 20, 2023, led to the State's filing of 18 criminal charges against him in two criminal cases in St. Tammany Parish.  ECF No. 32, ¶II, at 1-2; *id*., ¶III, at 2-3; ECF No 32-1, at 1-2.  Defendants urge that the criminal charges are based on the same events at issue in Joiner's civil complaint and should be stayed pursuant to *Wallace v. Kato*, 549 U.S. 384, 393 (2007), until the criminal charges are resolved, because a conviction would render the claims "moot."  ECF No. 32, ¶V, at 3; *id*. at ¶VI; ECF No. 32-1, at 4-5.  Citing *Hudson v. Hughes*, 98 F.3d 868 (5th Cir. 1996), defendants contend that a § 1983 claim of excessive force could imply the invalidity of a battery on an officer criminal charge.  ECF No. 32-1, ¶A, at 4.  Citing the reasoning in *Bush v. Strain*, No. 03-2836, 2004 WL 1158038, at *5 (E.D. La. May 24, 2004),

2

defendants contend that a stay is warranted when the Court is unable to determine how a plaintiff's excessive force claim would be impacted by a criminal conviction for resisting arrest. *Id*. at 5. For these reasons, defendants assert that a stay is warranted in this case.

In addition, Deputies Lewis and Cloud also contend that the doctrines of absolute and qualified immunity provide additional grounds for a stay in this case. ECF No. 32-1, ¶B, at 6. Defendants suggest that Joiner's conviction may bar all of his § 1983 claims against them as a matter of law and that the burdens of discovery should not be undertaken until the *Heck* issues are resolved. *Id*. Further, defendants also assert that, because the § 1983 claims are "inexorably" linked to the same set of facts as the criminal charges, discovery in this matter would be impossible because of Joiner's Fifth Amendment right against self-incrimination. ECF No. 32, ¶VII, at 3-4; ECF No. 32-1, ¶C, at 6-7. They argue that a stay is therefore necessary to avoid prejudice in their ability to conduct discovery. *Id*. at 7.

Attached to the motion, defendants provide a document titled "Case Information" that appears to be an uncertified, unverified, undated electronic, chronological listing of events and documents (not full docket entries) from Joiner's state court criminal cases which indicate that proceedings were scheduled in both cases for May 8, 2024. ECF No. 32-2; ECF No. 32-3. On May 15, 2024, defendants filed a supplemental memorandum informing the Court that Joiner's scheduled state criminal proceedings are postponed to June 24, 2024. ECF No. 48, ¶4, at 2.

## II.   Standards of Review

In *Heck*, the Supreme Court held that, to avoid collateral attacks on outstanding convictions, a claim brought under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or a plaintiff's present confinement. *Heck*, 512 U.S. at 484-85. A § 1983 plaintiff who has been convicted of a crime cannot recover damages

for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87). The Supreme Court later clarified that "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original). The *Heck* bar applies whether the plaintiff seeks monetary, injunctive, or declaratory relief. *Van Buren v. Walker*, 841 F. App'x 715, 716 (5th Cir. 2021) (recognizing the *Heck* bar to "any injunctive relief" tied to petitioner's § 1983 claim); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997) (extending *Heck* to bar a prisoner's claim for money damages and declaratory relief challenging disciplinary hearing procedures)).

The Supreme Court applied a modified version of *Heck* to pretrial detainees in *Wallace*, 549 U.S. at 393-94. In *Wallace*, the Court explained that, if a pretrial detainee files civil rights claims related to the validity of a pending criminal proceeding, the best practice is for the district court to stay the civil rights action until the pending criminal case is resolved to determine the impact of the *Heck* limitations. 549 U.S. at 393-94. *See Mackey v. Dickson*, 47 F. 3d 744, 746 (5th Cir. 1995) (finding stay of pretrial § 1983 challenges to be the best practice). The Court in *Wallace* explained:

4

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Wallace*, 549 U.S. at 393-94 (citations omitted).

Under this guidance, when intertwined and related criminal charges are still pending, the federal courts may stay § 1983 civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the state criminal prosecution concludes. *Id*. S*ee Hopkins v. Ogg*, 783 F. App'x 350, 355 & n.20 (5th Cir. 2019) (citing *Mackey*, 47 F.3d at 746). If the plaintiff is ultimately convicted on the relevant charges, the *Heck* bar would require dismissal of the case; if he is not, the District Court can proceed with the civil action, absent some other bar to suit. *Wallace*, 549 U.S. at 393-94.

## III. Discussion

Deputies Lewis and Cloud, in their official capacities only, present three arguments in support of their motion to stay. First, Joiner's § 1983 claims are potentially barred by *Heck* because the plaintiff's jaw was broken at the time of his arrest and the criminal charges arising from that arrest are still pending. Second, if the *Heck* bar applies, their right to absolute or qualified governmental immunity must be protected now by staying the action until discovery can be done on those defenses. Third, discovery at this time would be impossible since investigation into the claims could encroach on Joiner's Fifth Amendment right to remain silent, which would prejudice the defendants' ability to defend the claims against them.

5

### A.     <u>Defendants' Capacities in this Case</u>

Without explanation or argument, defendants Lewis and Cloud brought their motion *only* in their official capacities. As such, the Court will address the motion with that limitation. However, it is incumbent upon the Court to recognize that Joiner's *pro se* complaint is entitled to a broad construction. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) ("[W]e construe pro se pleadings liberally."). Joiner does not indicate the capacity in which he has named any of the defendants in his complaint. When this happens, to determine whether a defendant has been sued in his official or individual capacity, the court must look to the complaint and the course of the proceedings to determine in which capacity the defendant is sued. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically indicate the nature of the liability sought to be imposed.") (citations omitted); *United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (using course of proceedings to find defendant was sued solely in official capacity because plaintiff never challenged defendant's assertion in motion to dismiss that defendant was sued in official capacity); *Garrett v. Stephens*, 675 F. App'x 444, 447 (5th Cir. 2017) (where complaint did not specifically state whether plaintiff was suing defendants in their individual or official capacities, the Court "assume[d] he was pursuing both avenues."); *Hopkins v. Gusman*, No. 06-5022, 2007 WL 2407247, at *4 (E.D. La. Aug. 17, 2007) ("In the Fifth Circuit, 'the allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action.'" (quoting *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir.1973)); *Forside v. Miss. State Univ.*, No. 01-438, 2002 WL 31992181, at *5 n.2 (N.D. Miss. Dec. 30, 2002) ("While some circuits require rigid pleading requirements to specify individual or official capacity in section

1983 suits, . . . the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings.").[1]

Reviewing Joiner's complaint, he seeks both monetary and injunctive relief against Deputies Lewis and Cloud. The monetary relief sought is for his injured jaw, pain and suffering, and for the Deputies' alleged roles in the breaking of his jaw "by evil intent, reckless disregard for [his] rights, and callous indifference." ECF No. 1, ¶V, at 6. Broadly construing these terms and the request for monetary compensation, it appears to the Court that Joiner intends to sue the Deputies individually for violating his constitutional rights through their intentional use of excessive force. Nevertheless, since defendants have now appeared through this motion asserting an official capacity, the Court will consider Joiner's claims as having been brought in both Deputy Lewis's and Deputy Cloud's individual and official capacities.

### B.     Stay under *Heck/Wallace*

Defendants, in their official capacities, move for a stay because all of the criminal charges against Joiner arising from his January 20, 2023, arrest, when his jaw was broken, remain pending and have not been resolved. Defendants also urge conclusory notions that, at some point, they may be entitled to defenses of absolute and qualified immunity and are entitled to relief from potentially meaningless and prejudicial discovery attempts while the criminal charges are pending. The latter two contentions are misplaced.

---

[1] Citing other Circuits, one division of this Court has adopted the more rigid rule that "[w]hen a *pro se* plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F. Supp. 2d 877, 888-89 (E.D. La. Jun. 9, 2008) (Order adopting R&R) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999); *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)).

First, as St. Tammany Parish Sheriff's Deputies in an official (or individual) capacity, the Deputies would not be entitled to any recognized doctrine of absolute immunity; that is, the Deputies are not arms of the state, judicial officers, prosecutors, or trial witnesses accused of perjury. *Cozzo v. Tangipahoa Par. Council-Pres. Gov't.*, 279 F.3d 273, 283 (5th Cir. 2002) (a sheriff is a Parish official not protected under the Eleventh Amendment sovereign immunity); *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (judicial immunity); *Imbler v. Patchman*, 424 U.S. 409, 430-31 (1976) (prosecutorial immunity); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (trial witness immunity); *see Wheeler v. Cosden Oil and Chem. Co.*, 734 F.2d 254, 261 (5th Cir. 1984) (deputy not immune for perjury in pretrial probable cause hearing), *modified on other grounds*, 744 F.2d 1131 (5th Cir. 1984). The *Heck* bar is just that, a bar designed as a potentially temporary measure prohibiting a plaintiff from asserting § 1983 claims until certain hurdles related to his criminal conviction are met. *See Wallace*, 549 U.S. at 393-94. The Court can find no support for the defendants' suggestion that *Heck* is an absolute immunity doctrine or that they would be entitled to an absolute protection from Joiner's claims if the *Heck* conditions could be met. The *Heck* bar by its very terms would not render Joiner's claims "moot," as defendants argue, but only barred until such time as the *Heck* conditions are met.

In addition, as Parish deputies in an official capacity, Deputies Lewis and Cloud would not be entitled to a qualified immunity defense (or related discovery). It is beyond cavil that the personal defense of qualified immunity does *not* apply to official-capacity claims. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Graham*, 473 U.S. at 166-67 and *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (qualified immunity is "inapplicable in § 1983 suits against government officials in their 'official capacity'")); *Keim v. City of El Paso*, 162 F.3d 1159 (5th Cir. 1998) (the individual defense of qualified immunity does not apply to an

8

official-capacity claim); *Goodman v. Harris Cnty.*, 571 F.3d 388, 394-95 (5th Cir. 2009) (explaining the distinction between personal- and official-capacity claims and instructing that qualified immunity applies to the former); *Mangaroo v. Nelson*, 864 F.2d 1202, 1206 (5th Cir. 1989) (qualified immunity does not apply to official-capacity claims). Qualified immunity also is not available for claims for injunctive relief like those sought by plaintiff. *Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020) ("qualified immunity protect[s] only individuals from claims for damages; [it does] not bar official capacity claims or claims for injunctive relief.").

Instead, as Parish deputies in an official capacity, liability would be governed by the constitutional-policy inquiries under *Monell v. Dep't of Soc'l Servs. of City of New York*, 436 U.S. 658 (1978).[2] The *Heck* doctrine may be available to bar *Monell* claims brought against a government official in an official capacity or the local governing body they represent. "[C]laims under *Monell* require an underlying constitutional violation and, where the underlying violation is barred by *Heck*, it cannot form the basis for a derivative *Monell* claim." *Williams v. Town of Delhi*, No. 14-0043, 2015 WL 868746, at *7 (W.D. La. Feb. 27, 2015); *see DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007) (barring claims against individual officer and municipality pursuant to *Heck*). Thus, for *Heck* to apply to a *Monell* claim, the Court must first determine whether *Heck* bars consideration of the underlying claim of excessive force or false arrest brought against the entity's subordinate. *Id*.

---

[2] A § 1983 suit against a government officer "in his official capacity" is the same as a suit against the government entity of which he is an agent. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999) (citing *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 784-85 (1997)). The Court must apply the *Monell* test to ensure that local governing bodies are held responsible only for "their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Under *Monell*, a local governing entity is liable if the plaintiff can show (1) the existence of an official policy or custom, (2) a policymaker's actual or constructive knowledge of the policy or custom, and (3) a constitutional violation where the policy or custom was the "moving force." behind the violation. *Pudas v. St. Tammany Par., La.*, No. 18-10052, 2019 WL 2410939, at *3 (E.D. La. Jun. 7, 2019) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)).

9

Making that determination requires more than finding that a laundry-list of charges were brought against a § 1983 plaintiff, as defendants' motion suggests. Instead, the determination of whether the *Heck* bar applies to a § 1983 excessive force claim, "is analytical and fact-intensive, requiring [a court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush*, 513 F.3d at 497 (footnote omitted). "In other words, if the conviction and successful § 1983 claim can co-exist, *Heck* is no bar to suit." *Williams v. McDonough*, No. 22-40281, 2023 WL 2733443, at *2 (5th Cir. 2023) (citing *Poole v. City of Shreveport*, 13 F. 4th 420, 426-27 (5th Cir. 2021)).

In making this assessment, there is "no *Heck* bar if the alleged violation occurred *'after' the cessation of the plaintiff's misconduct* that gave rise to his prior conviction." (emphasis added) *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020). In the *Bush v. Strain* civil action referenced by defendants, the ultimate *Heck* outcome was very different from the initial cursory findings attendant to the stay order quoted in defendants' motion. ECF No. 32-1, ¶A, at 5. The plaintiff in that case was convicted of resisting arrest under La. Stat. Ann. § 14:108, and later brought her § 1983 claim for excessive force against the arresting officers. *Bush*, 513 F.3d at 496-98. The plaintiff in *Bush* specifically alleged that the arresting officer pushed her face into the back of an automobile *after* she was handcuffed and was no longer resisting arrest. *Id*. at 496. The Magistrate Judge, presiding on consent of the parties, granted defendants' motion for summary judgment finding that *Heck* barred Bush's excessive force claim. *Id*. at 496-97. The United States Fifth Circuit reversed that holding, finding that, because Bush had "produced evidence that the alleged excessive force occurred *after* she stopped resisting arrest, and the fact findings essential to her

10

criminal conviction are not inherently at odds with the claim, a favorable verdict on her excessive force claims [would] not undermine her criminal conviction." (emphasis added) *Id*. at 500.

Thus, when the excessive force claim arises from "'a single violent encounter' in which the plaintiff insists he was an innocent party," *Heck* would apply to bar the claim. *Lee v. Ard*, 785 F. App'x 247, 248 (5th Cir. 2019) (quoting *Bush*, 513 F.3d at 498 and citing *DeLeon*, 488 F.3d at 656-57). However, the excessive force claim is *not* barred by *Heck* "if it is 'temporally and conceptually distinct'" from the incidents leading to the criminal conviction. *Id*. The *Lee* opinion provided that, as an example, "[a] claim that excessive force occurred after the arrestee submitted to the officer and stopped resisting 'would not necessarily imply the invalidity of a conviction for the earlier resistance.'" *Id*. (quoting *Bush*, 513 F.3d at 498); *see Hall v. Abilene's Task Force*, 681 F. App'x 422, 423 (5th Cir. 2017) (finding *Heck* barred excessive force claims because plaintiff did not assert that the officers' use of force was "temporally or conceptually distinct" from his criminal conviction and instead arose from "a continuous series of events" (citing *DeLeon*, 488 F.3d at 656-57)); *see also Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 316-17 (5th Cir. 2021) ("In *Bush*, we held that *Heck* did not bar a plaintiff convicted of resisting arrest from bringing an excessive-force claim arising from the same conduct where the officer's use of force allegedly continued after the plaintiff was handcuffed and had ceased resisting.").

In the instant motion, defendants Lewis and Cloud have provided no factual contention or support, such as police reports or factual basis of the charges, that would indicate that Joiner's § 1983 claim is inextricably intertwined with the merits of any of the pending criminal charges as would be required by *Heck* and *Wallace*. Among the myriad of felony and misdemeanor drug and weapons charges listed in the motion, it appears that Joiner was charged with resisting a police officer with force or violence, simple escape by intentional departure of a person from the place

11

of legal confinement, and misdemeanor battery of a police officer. ECF No. 32, ¶II, at 1-2; ECF No. 32-2, at 1; ECF No. 32-3, at 1. Defendants, however, have not indicated that Joiner's jaw was broken during or in connection with any of these criminal events or that any of Joiner's criminal activity leading to these charges occurred *after* he was restrained in handcuffs. Similarly, Joiner's complaint also does not provide more than the statement that, after he was restrained in handcuffs, Deputies Lewis and Cloud broke his jaw. Thus, neither Joiner nor the defendants provide a timeline of events leading to the broken jaw that would indicate the temporal proximity of the criminal acts and the alleged use of excessive force.

Simply put, there is nothing in the pleadings to suggest whether the broken jaw incident occurred temporally with any of the charged criminal activity, *i.e.* while Joiner resisted the officers efforts to restrain him, while Joiner attempted to depart from custody, or while Joiner battered an officer. Based on the foregoing precedent, if Joiner's broken jaw occurred after he was restrained in handcuffs and no longer resisting or posing a threat to officers, there is no potential *Heck* bar or need for a stay. *See Bush*, 513 F.3d at 498; *Rogers v. Jefferson Par. Sheriff's Office*, No. 18-11164, 2022 WL 124028, at *6 (E.D. La. Jan. 13, 2022) (plaintiff's claim that officers used excessive force after he was handcuffed was not barred by *Heck* because the claim did not imply the invalidity of his conviction for resisting arrest by flight before he was handcuffed). On the other hand, if the broken jaw occurred during an ongoing series of events leading to or including the resisting, flight, and battery charges, then a stay would be proper under *Wallace* until such time as the applicability of *Heck* can be properly addressed after disposition of the relevant, pending charges of resisting a police officer with force or violence, simple escape by intentional departure of a person from the place of legal confinement, and misdemeanor battery of a police officer. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004).

12

In summary, the Court has been provided no information on which to discern the factual basis for the relevant pending criminal charges to determine whether the broken jaw occurred during "a single violent encounter" to provoke a stay under *Wallace* or at a "temporally or conceptually distinct" point to allow the excessive force claim to proceed without a *Heck* bar. In other words, the allegations and arguments before the Court are superficial and conclusory and neither the complaint nor the motion provide a clear path for the Court to follow.

Nevertheless, the Court recognizes that this is a motion for a stay of the proceedings not a wholly dispositive motion on the issue of the *Heck* defense. Joiner has not opposed defendants' motion or provided facts relevant to resolve the issue at hand. At the very least, defendants arguably suggest in the motion, though unartfully, that there is some inevitable entanglement between the crimes charged and Joiner's excessive force claim. Thus, at this juncture, the most prudent action for the Court to take is to grant the stay of Joiner's claims of excessive force against Lewis and Cloud until such time as Joiner and/or the defendants provide support as to the applicability of the *Heck* bar to Joiner's claims arising from his January 20, 2023, arrest. Although defendants' motion was brought only in their official capacities, the stay should abate Joiner's claims against Lewis and Cloud in both their individual and official capacities in the interest of judicial economy and to avoid redundancy.

Furthermore, the stay will have no bearing on Joiner's pending medical indifference claims separately asserted against Drs. Gore and Ham, which remain pending at this time. Plaintiff's claims of medical indifference against the prison doctors are more than temporally and conceptually distinct from the claims against the movants and the criminal charges.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the Motion to Stay (ECF No. 32) filed by defendants Lewis and Cloud, in their official capacities, be **GRANTED** and the Court Order that, pursuant to *Wallace v. Kato*, 549 U.S. 384 (2007), plaintiff Joiner's excessive force claims arising from his January 20, 2023, arrest brought against defendants Lewis and Cloud, in their individual and official capacities, be **STAYED** and that, within 60 days from finality of Joiner's conviction or a favorable disposition of the state criminal charges for resisting a police officer with force or violence, simple escape by intentional departure of a person from the place of legal confinement, and misdemeanor battery of a police officer, either plaintiff or these defendants may move to reopen the matter for further proceedings consistent with *Heck v. Humphrey*, 512 U.S. 477 (1994).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).³

New Orleans, Louisiana, this   21st   day of May, 2024.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

³ *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.