UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN JOINER                                        CIVIL ACTION

VERSUS                                              NO. 23-7144

TAYLOR LEWIS, ET AL.                      SECTION "R" (4)

## ORDER AND REASONS

Before the Court is defendants Samuel Gore and Jose Ham's opposed[1] motion for summary judgment.[2]  For the following reasons, the Court grants the motion.

## I.      BACKGROUND

This case arises out of injuries following an alleged incident after a traffic stop.[3]  Plaintiff John Joiner, proceeding *pro se*, alleges that he was in an altercation with police that led to a jaw injury.[4]  He alleges that, during the course of receiving medical treatment, he was denied follow-up appointments and refused treatment, resulting in chronic pain.[5]  Plaintiff filed a complaint in this Court, alleging violations of his Eighth Amendment

---

[1]    R. Doc. 88.
[2]    R. Doc. 86
[3]    R. Doc. 1 at 5.
[4]    *Id.*
[5]    *Id.*

rights under 42 U.S.C. § 1983 against two police officers and physicians, Dr. Samuel Gore and Dr. Jose Ham.[6]

Defendants Dr. Gore and Dr. Ham move for summary judgment on plaintiff's Section 1983 claim. They argue that plaintiff cannot establish deliberate indifference.[7] Defendants filed this motion before the Court set discovery deadlines. Plaintiff opposes the motion.[8]

The Court considers the motion below.

## II.    LEGAL STANDARD

Courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam). This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing." *Jones v. Alfred*, 353 Fed. Appx. 949, 952 (5th Cir. 2009). Additionally, *pro se* litigants must abide by the applicable federal rules. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

---

[6]    R. Doc. 1.

[7]    R. Doc. 86.

[8]    R. Doc. 88.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of

evidence" (citations omitted)).   "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."   *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.   *See Celotex*, 477 U.S. at 325.   The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.   *See id.* at 324.   The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution.   *See, e.g.*, *id.*

## III.   DISCUSSION

### A. Timing of Defendants' Motion

Defendants filed this motion before discovery has been scheduled. While "Rule 56 does not require that any discovery take place before summary judgment can be granted," *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990), a party must be "given a full and fair opportunity to discover information essential to its opposition to summary

judgment," *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002). A party asserting a need for discovery must make a showing pursuant to Rule 56(d). *Baker*, 430 F.3d at 756. Under Rule 56(d), the Court may "defer considering the motion [for summary judgment] or deny it" if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(1). Rule 56(d) motions are "broadly favored and should be liberally granted," because the rule is designed to "safeguard non-moving parties from summary judgment motions they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

With their motion, defendants filed 156 pages of plaintiff's medical records spanning from January 20, 2023, to January 10, 2024.[9] Plaintiff gave no indication that he needed or desired more discovery than these records. He did not file an affidavit stating that more discovery would be helpful and made no effort to comply with Rule 56(d). His arguments relied only on these medical records in attempting to establish that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Defendants argue that the course of conduct outlined in the medical records

---

[9]    R. Doc. 86-2.

does not establish deliberate indifference, while plaintiff argues that it does. Because plaintiff assumed that the evidence in the medical records was sufficient to oppose summary judgment, and because there appears to be no genuine issue as to any material fact, the Court holds that plaintiff has had a full and fair opportunity to discover information essential to his opposition to summary judgment. The summary judgment record is ripe for consideration, and there is no reason to delay consideration of the summary judgment motion pending further discovery.

## B. Plaintiff's Eighth Amendment Claims

Under the Eighth Amendment, "[t]he mere delay of medical care can . . . constitute an Eighth Amendment violation," but only if there has been a deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 825 (1994)). A plaintiff must show that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any

serious medical needs." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Arguing that the physician did not provide plaintiff's desired course of treatment is insufficient because "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Id.* (quoting *Estelle*, 429 U.S. at 107). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *see Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) ("Deliberate indifference is not established when 'medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials.'" (alteration in original) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (assertions that the prison's medical personnel have incorrectly diagnosed plaintiff's illness or that their treatment has been unsuccessful is not sufficient to establish a genuine fact

issue as to whether an Eighth Amendment violation occurred).  For these reasons, "[d]eliberate indifference is an extremely high standard to meet." *Domino*, 239 F.3d at 756.

Plaintiff fails to point to evidence raising a material issue of fact that defendants Dr. Gore and Dr. Ham were deliberately indifferent to his medical needs.  Plaintiff's claims rest on his assertion that defendants intentionally denied him follow-up appointments and refused him treatment for issues related to his jaw.[10]  Specifically, plaintiff asserts that defendants rescheduled his appointments to days in which he could not be evaluated by a particular specialist and that defendants hampered his surgery in order to evade the cost to fix his jaw.[11] But plaintiff's medical records demonstrate that the medical professionals were responsive to plaintiff's needs and that he received treatment.

Dr. Samuel Gore served as plaintiff's treating physician at the jail,[12] and Dr. Jose Ham served as a medical supervisor.[13]  The record reflects that plaintiff was seen by a medical professional fifteen times between January

---

[10]    R. Doc. 1 at 5.
[11]    R. Doc. 88 at 7–8.
[12]    *See id*. at 25, 59, 65, 74, 105, 113, 115, 126, & 129.
[13]    R. Doc. 86-1 at 6.

20, 2023, and January 10, 2024.[14]   Although plaintiff sought medical treatment for other ailments during the year, eleven of his provider visits related to his jaw pain.[15]   Of those, six appointments were with providers employed by the jail,[16]  and four were appointments with outside physicians to which Dr. Gore referred plaintiff.[17]  He was evaluated by Dr. Gore once, on January 10, 2024.[18]  He was never evaluated by Dr. Ham.

The record reflects that Dr. Ham's involvement in the matter was minimal.  He simply uploaded the medical record from plaintiff's emergency room visit following the alleged altercation.[19]   Under Section 1983, "supervisory officials are not liable for the actions of subordinates on any

---

[14]    He visited a provider on January 20, 2023; January 21, 2023; January 25, 2023; February 7, 2023; February 9, 2023; March 3, 2023; March 8, 2023; April 21, 2023; May 17, 2023; May 22, 2023; August 10, 2023; September 7, 2023; September 24, 2023; October 11, 2023; and January 10, 2024.  R. Doc. 86-2.

[15]    The jaw-pain related appointments were on January 20, 2023; January 21, 2023; January 25, 2023; February 7, 2023; February 9, 2023; March 3, 2023; March 8, 2023; April 21, 2023; May 22, 2023; August 10, 2023; and January 10, 2024.  *Id.*

[16]    These appointments were on January 21, 2023; January 25, 2023; February 9, 2023; March 8, 2023; August 10, 2023; and January 10, 2024.  *Id.*

[17]    These appointments were on February 7, 2023; March 3, 2023; April 21, 2023; and May 22, 2023.  *Id.*  One appointment, on January 20, 2023, was with an emergency room physician immediately following the alleged altercation.  *Id.*

[18]    *Id.* at 25.

[19]    *Id.* at 156.

theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  A supervisor may be held liable if (1) he was "personal[ly] involve[d] in the constitutional deprivation, or (2) [there existed] a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304.  Additionally, a supervisor can be held liable without overt personal participation if he or she "implement[s] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Id.* (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).  Because Dr. Ham is a medical supervisor, he is analyzed under this standard.  There is no evidence that Dr. Ham was personally involved in the alleged constitutional violation of denying plaintiff follow-up appointments and refusing him treatment; that there is a connection between any of Dr. Ham's conduct and the alleged violation; or that Dr. Ham implemented any deficient policy which led to the alleged violation.  Therefore, plaintiff fails to create a genuine issue of material fact that Dr. Ham violated his constitutional rights. The Court must grant summary judgment on plaintiff's claims against Dr. Ham.

    Plaintiff complained that defendants denied him an appointment with Dr. Andrew Dullnig, a physician at the University Medical Center ("UMC"),

who was supposed to evaluate plaintiff as a candidate for jaw surgery. Plaintiff bases this complaint on the fact that he had to reschedule his evaluation three times before he was able to be properly evaluated. Plaintiff was initially evaluated by Dr. Amir Maki at the UMC Oral Surgery Clinic on February 7, 2023.[20]  Dr. Maki referred plaintiff for a follow-up with Dr. Dullnig.[21]  The next two times plaintiff attended follow-up appointments at UMC, March 3 and April 21, Dr. Dullnig was not in the office.[22]  Dr. Gore noted on each of the medical follow-up records that plaintiff needs to be scheduled with Dr. Dullnig on a day when he is in the office.[23]

Plaintiff was evaluated at UMC as a candidate for jaw surgery on May 22.[24]  While Dr. Dullnig did not examine plaintiff, another oral surgeon determined that plaintiff's jaw was not likely to benefit from surgical intervention and that he did not need another appointment.[25]  Even though

---

[20]    *Id*. at 129.

[21]    *Id*.

[22]    *Id*. at 115, 113.

[23]    *Id*. at 130 (On the February 7 record, Dr. Gore circled Dr. Dullnig's name along with the desired date and time and wrote "please schedule."); *id*. at 115 (On the March 3 record, Dr. Gore circled Dr. Dullnig's name and the desired date and wrote "please schedule ASAP—on a Monday with this specific MD."); *Id*. at 113 (On the April 21 record, Dr. Gore circled the desired date and underlined Dr. Dullnig's name and wrote "please reschedule.").

[24]    *Id*. at 105.

[25]    *Id*. at 104.

plaintiff had to be rescheduled three times before receiving this evaluation, the rescheduling resulted in only a two month delay,[26] and the physicians at UMC ultimately determined that plaintiff was not a proper candidate for surgical intervention.

Mere delay in receiving care is not in and of itself a constitutional violation; there is a violation only when plaintiff shows that the delay constituted deliberate indifference to serious medical needs and resulted in substantial harm. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Plaintiff failed to make such a showing. Though plaintiff argues that the medical record demonstrates deliberate indifference because of the delay in scheduling, it does not establish that the "doctors denied, substantially delayed, or intentionally interfered with [plaintiff's] treatment." *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999). Plaintiff's unsuccessful UMC appointments were immediately rescheduled for the following month, and practitioners in the St. Tammany Parish Jail system cared for plaintiff in the interim. He has had numerous appointments, diagnoses, and up-to-date medications from a variety of medical professionals.[27] *See Banuelos v.*

---

[26] The two months is between March 3, 2023, the date on which plaintiff was supposed to see Dr. Dullnig for the first time, and May 22, 2023, the date on which plaintiff attended a Monday appointment.

[27] In addition to the appointments outlined above, plaintiff was diagnosed with a zygomatic arc fracture on January 20, 2023, and

*McFarlan*d, 41 F.3d 232, 235 (5th Cir.1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); *see also Norton v. Dimazana*, 122 F.3d 286, 291–92 (5th Cir. 1997) (finding plaintiff's "complaints about the treatments he has received" do not amount of deliberate indifference in light of "[t]he medical records [that] indicate that [plaintiff] was afforded extensive medical care by prison officials, who treated him at least once a month"). Twice failing to schedule an appointment on the correct day, even if negligent, does not give rise to a constitutional violation. *Stewart*, 174 F.3d at 534; *see also Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."). As demonstrated by the numerous medical visits and consultations plaintiff had, Dr. Ham and Dr. Gore were not deliberately indifferent to plaintiff's serious medical needs.

Finally, though plaintiff may disagree with the recommended treatment plan the practitioners at UMC and the St. Tammany Parish Jail

---

February 8, 2023. *See id*. at 65, 137. Plaintiff was also prescribed 400 mg of ibuprofen on January 22. *Id*. at 4. On January 25, plaintiff was prescribed 500 mg of acetaminophen and was placed on a soft food died. *Id*. at 70, 3. The 500 mg acetaminophen prescription was re-prescribed twice within a day of it expiring on April 16, 2023, and October 6, 2023. *Id*. at 3.

system ultimately settled on, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference claim." *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (internal quotations omitted); *see Gros v. Lafourche Par.*, 2022 WL 509357, at *6 (E.D. La. Jan. 12, 2022), *report and recommendation adopted*, 2022 WL 503770 (E.D. La. Feb. 18, 2022) (collecting cases) ("An inmate's claims of negligent care or his mere disagreement with the speed, quality, or extent of medical treatment received, however, does not give rise to a § 1983 claim."); *Ducksworth v. Macmurdo*, 809 F. App'x 249, 250 (5th Cir. 2020) (per curiam) (A treating physician's decision "not [to] follow the treatment recommendation of another physician . . . does not establish deliberate indifference."). Plaintiff fails to raise an issue of material fact that Dr. Ham and Dr. Gore violated his Eight Amendment rights and were deliberately indifferent to his medical needs. The Court therefore grants defendant's motion for summary judgment and dismisses plaintiff's Section 1983 claims against Dr. Ham and Dr. Gore.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.  Plaintiff's Section 1983 claims against Samuel Gore and Jose Ham are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __5th__ day of May, 2025.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE